*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* R ROBINSON, Minor.

UNPUBLISHED
May 23, 2024

No. 368420
Ottawa Circuit Court
Family Division
LC No. 2022-098507-NA

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor child, RR, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and (j) (reasonable likelihood that child will be harmed if returned to parent).[1] We affirm.

## I. FACTUAL BACKGROUND

RR was born to her mother and respondent in March 2020. Her younger sister, RMR, was born to the same parents in August 2021. Children's Protective Services (CPS) first intervened with the family in July 2020 due to allegations of improper supervision of RR. That case was closed in January 2021. Respondent and RR's mother have a history of domestic violence, and, in October 2021, a no-contact order was entered between them. CPS initiated another case regarding RR and RMR on July 18, 2022, due to concerns about the parents' domestic violence, substance abuse, inadequate housing, and improper supervision.

On July 29, 2022, respondent and RR's mother were evicted from their apartment. The same day, respondent was incarcerated in Ottawa County for a charge of fourth-degree criminal sexual conduct (CSC-IV) unrelated to the minor children. Additional unrelated CSC-IV charges were also pending against respondent in Allegan County. Following the eviction, the children and their mother lived in a shelter. On August 9, 2022, while bathing the children and talking to respondent on the phone, RR's mother removed RR from the bathtub, leaving RMR unsupervised

---

[1] RR's mother was a respondent throughout this case, and her parental rights to RR were also terminated by the trial court. RR's mother is not a party to this appeal.

in several inches of water. RMR was found unconscious, taken to the hospital, and placed on life support.

On August 12, 2022, the Department of Health and Human Services (DHHS) petitioned the trial court to take jurisdiction over the children and issue an order removing them from the custody of their parents. Both parents waived probable cause, and the trial court authorized the petition. Several days later, RMR was taken off of life support and died.[2] RR was eventually placed with her mother's cousin, where she remained for the duration of the proceedings.

Respondent was released on bond on August 30, 2022. At the initial disposition hearing on October 14, 2022, respondent's caseworker reported that the original barriers to reunification included substance abuse, criminality, domestic violence, inadequate housing, improper supervision, mental-health concerns, and parenting skills.[3] The trial court adopted the case service plan created by DHHS and ordered respondent to participate in and benefit from the services offered. Approximately two weeks later, on November 3, 2022, respondent was incarcerated again for drinking alcohol in violation of his bond conditions. In January 2023, he pleaded guilty to CSC-IV in Ottawa County and remained incarcerated until August 1, 2023.

In September 2023, DHHS petitioned to terminate both parents' rights. The termination hearing commenced on October 10, 2023. The following day, respondent was incarcerated again on domestic violence charges after drinking alcohol and getting into an altercation with his stepfather.[4] Although he was incarcerated at various times throughout the proceedings in this case, respondent attended and participated in all pertinent hearings, either in person or virtually.

The termination hearing concluded on October 17, 2023, and the trial court entered an order terminating both parents' rights to RR on October 18, 2023. In its written order, the trial court found, among other things, that "[r]easonable efforts were made to preserve and unify the family to make it possible for the child(ren) to safely return to the child(ren)'s home" and that "[t]hose efforts were unsuccessful."

Respondent now appeals, arguing that DHHS did not make reasonable efforts to reunify him with RR and that he did not receive a meaningful opportunity to participate in the case service plan, which amounted to a denial of due process. We disagree.

## II. STANDARD OF REVIEW

We review for clear error a trial court's decision regarding reasonable efforts toward reunification. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d

---

[2] RMR was originally included as one of the subjects of this proceeding but she was removed following her death.

[3] Unstable employment was later added to the list of barriers to reunification.

[4] Respondent also admitted to drinking alcohol in August 2023 on the anniversary of RMR's death.

115 (2011). "When reviewing the trial court's findings of fact, this Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *Fried*, 266 Mich App at 541. We review de novo whether proceedings complied with a party's right to due process. *In re Rood*, 483 Mich 73, 90; 763 NW2d 587 (2009).

## III. REASONABLE EFFORTS

Generally, DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). "As part of these reasonable efforts, [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Hicks/Brown*, 500 Mich at 85-86. "The state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Commensurate to DHHS's duty to offer services to the respondent-parent, the respondent-parent has a duty to participate in and benefit from the services. *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014). "[T]ermination is improper without a finding of reasonable efforts." *Hicks/Brown*, 500 Mich at 90; see also MCL 712A.18f(4).

The trial court found that DHHS made reasonable efforts to reunify respondent with RR, and our review of the record reveals no clear error in that finding. DHHS created a case service plan for respondent, which the trial court adopted at the initial dispositional hearing. DHHS offered services to respondent throughout the duration of the case including referrals for counseling, parenting education, housing resources, substance abuse assessments and screening, and supportive and in-person parenting time visits. While respondent could not participate in some of these services during his periods of incarceration, respondent was offered and did, in fact, participate in counseling, parenting education courses, and telephonic parenting time with RR while he was incarcerated. On the record before us, we see no clear error in the trial court's finding that reasonable efforts were made.

## IV. DUE PROCESS

"It is axiomatic that a parent has a fundamental liberty interest in the care, custody, and management of his or her child, which is constitutionally protected." *TK*, 306 Mich App at 706, citing *Rood*, 483 Mich at 91. "Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person or life, liberty, or property without due process of law." *TK*, 306 Mich App at 706 (quotation marks omitted). As this Court has summarized,

> There are two types of due process: procedural and substantive. Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker. The essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests. Ultimately, due process requires fundamental fairness. [*Id.* (citations omitted)].

"The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents . . . ." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).

Respondent argues that he was not provided a meaningful opportunity to participate in the services offered because of his incarceration, and therefore termination of his parental rights violated due process. We disagree.

To start, we see no basis to conclude that respondent was denied procedural due process. As previously discussed, DHHS complied with the requirement to make reasonable efforts to reunify the family by offering services during and after respondent's incarceration. Further, the record reflects that respondent was given due notice and opportunity to be heard, appearing at and participating in all pertinent hearings throughout the proceedings, including when he was incarcerated. Cf. *Rood*, 483 Mich at 199 (termination of parental rights violated due process where the state failed to comply with statutory notice requirements and requirements that the state attempt to locate, assess, and engage a nonparticipating parent).

Nor do we see any basis to conclude that the termination of respondent's parental rights violated his right to substantive due process. "In order to comply with the guarantees of substantive due process, the state must prove parental unfitness by at least clear and convincing evidence before terminating a respondent's parental rights." *In re B and J*, 279 Mich App 12, 23; 756 NW2d 234 (2008), citing *Santosky*, 455 US at 748. In essence, respondent argues that, because his incarceration prevented him from engaging in most of the case service plan, there was a lack of affirmative evidence of his unfitness as a parent and, as a result, the trial court clearly erred by finding that grounds for termination were proven by clear and convincing evidence. The record, however, does not bear out this claim.

The trial court found clear and convincing evidence that the conditions of adjudication continued to exist and that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering RR's age. See MCL 712A.19b(3)(c)(*i*). Those conditions included respondent's struggles with alcohol and domestic violence, improper supervision and parenting skills, unstable employment, and inadequate housing for RR. The goal of the case service plan was to remove these barriers to reunification, and the record reflects that respondent did participate and show some progress at times. "[M]ere participation" in services, however, "is not the same as overcoming the barriers in place." *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021). And the record shows that respondent's efforts and progress were neither reliable nor durable, and that the fact of his incarceration was by no means solely to blame for his failures under the case service plan.

Early on in the proceedings, respondent acknowledged that he had a serious problem with alcohol and that drinking was involved in all of his past domestic violence incidents. Unfortunately, respondent's pattern of drinking and domestic violence persisted throughout the proceedings. During his initial release, from August 30, 2022 to November 3, 2022, respondent relapsed three weeks after the trial court adopted the case service plan, which led to his incarceration. During his second release, from August 1, 2023 to October 11, 2023, respondent again struggled to stay sober. He relapsed on August 21, 2023, and again on October 11, 2023, which led to a domestic violence incident and resulted in his reincarceration. Respondent testified that he had been accepted into a sober living facility in September 2023 and that he was attending AA six times a week, but his inability to stay sober indicated that he was not benefiting from those services.

Maintaining sobriety was not the only component of the service plan with which respondent failed to comply. Respondent missed four consecutive parenting time visits with RR, resulting in his termination from a supportive visitation program. Respondent argues that he obtained employment upon being released in August 2023, but his caseworker testified at the termination hearing that she was unable to ever verify respondent's employment and respondent testified that he had difficulty finding long-term, stable employment due to the nature of his criminal history. And while respondent testified that he had secured housing in a sober living facility in September 2023, he also acknowledged that RR could not live with him there. We see no clear error in the trial court's finding that the conditions of adjudication continued.

We also see no clear error in the trial court's finding that it was not reasonably likely that those conditions would be rectified within a reasonable time given RR's age. Respondent argues that he should have been given more time to progress before the termination decision was made, but this neglects that the court must consider how much time is reasonable based on the child's age. See *Sanborn*, 337 Mich App at 274-275. As the trial court noted in its termination decision, RR had been in foster care for approximately 15 months already, which made up a third of her life. RR's need for permanency and stability was urgent and paramount, and nothing in respondent's performance under the case service plan suggested that the conditions leading to adjudication would be rectified within a reasonable amount of time considering RR's age.

The conditions leading to adjudication included respondent's alcohol abuse and related domestic violence, inadequate housing, and unemployment. As the trial court duly recognized, clear and convincing evidence demonstrated that those conditions continued to exist and there was not a reasonable likelihood that they would be rectified within a reasonable time given RR's age.[5] On the record before us, we see no basis to conclude that respondent was denied a meaningful opportunity to participate in services or that his due-process rights were violated in the termination of his parental rights.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten F. Kelly
/s/ Philip P. Mariani

---

[5] Because we conclude that the trial court did not clearly err with respect to this statutory ground, we need not address its findings regarding MCL 712A.19b(3)(j). See *In re HRC*, 286 Mich App 444, 461, 781 NW2d 105 (2009) ("Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision.").